## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ADMIRAL INDEMNITY COMPANY, | ) ) ) | |
| Petitioner, | ) ) | CIVIL ACTION FILE |
| vs. | ) ) | NO.: |
| THE LANDMARK CONDOMINIUM ASSOCIATION, INC., | ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, Admiral Indemnity Company ("Admiral"), Petitioner in the above-styled action, and hereby files this Complaint for Declaratory Judgment against The Landmark Condominium Association, Inc. ("Defendant Landmark"), showing this Honorable Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.

This is an action for declaratory judgment, brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist

between Plaintiff Admiral Indemnity Company and Defendant Landmark Condominium Association, Inc.

2.

Admiral is a company organized and existing under the laws of the state of Delaware, and having its principal place of business at 301 Route 17 North, Suite 900, Rutherford, New Jersey 07070. For the purpose of this action, Admiral submits itself to the jurisdiction of this Court.

3.

Defendant The Landmark Condominium Association, Inc. is a Georgia domestic nonprofit corporation with its principal place of business located at 215 Piedmont Avenue NE, Atlanta, Georgia 30308 (the "Property"). The Landmark Condominium Association, Inc. may be served with process by serving its registered agent Alexandra Betancur at 215 Piedmont Avenue NE, Atlanta, Georgia 30308. The Landmark Condominium Association is a citizen of the State of Georgia and was a Citizen of the State of Georgia at the time of filing this Complaint for Declaratory Relief and at all other times pertinent herein.

4.

This Court has personal jurisdiction over Defendant Landmark as it is a Georgia nonprofit corporation.

5.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the registered agent for Landmark is located in Fulton County, Georgia, which is contained within the jurisdiction of the United States District Court for the Northern District of Georgia.

6.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because it is a civil action in which the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and is among citizens of different states.

7.

Specifically, in the underlying insurance claim, Defendant submitted a signed sworn proof of loss stating that the value of its claim from Admiral totaled $15,027,990.46 and that it sought this amount in benefits under Admiral Policy No.: CPP 21-21947510-30 (the "Policy") (See, Exhibit A, Sworn Statement in Proof of Loss).

8.

An actual, justiciable controversy presently exists between the parties, which demands a declaration by this Court in order that Admiral may have its rights and duties under the Policy determined and avoid the possible accrual of damages.

## FACTUAL BACKGROUND

### 9.

Admiral incorporates by reference the foregoing Paragraphs 1 through 8 as if fully set forth herein.

### 10.

This case arises out of an insurance claim initiated by Defendant Landmark seeking coverage under the Policy for damages caused by a fire loss to the Property, which occurred on or around January 17, 2024 (the "Loss").

### 11.

The Property contains a total of twenty-two stories consisting of twenty stories of residential units, five commercial units located in the lobby on the first floor, and a basement.

### 12.

There was no sprinkler system or any other fire suppression system in any of the twenty stories of residential units, any of the five commercial units, and any portion of the lobby at the Property. Only a small portion of the basement area had a sprinkler system.

### 13.

Upon information and belief, the Property is, at most, five percent sprinklered.

14.

The Loss originated in a commercial space located at the Property.  At the time of the Loss, a business owned and operated by Yali Lu, the president of Defendant The Landmark  Condominium Association, Inc., occupied the commercial space.

15.

Relation Insurance Inc. acted exclusively as the independent agent for Defendant Landmark to procure insurance coverage since at least 2021.

16.

Alexandra Bentancur is an employee of Defendant Landmark and the property manager for the Property.  In this capacity, Ms. Bentancur was authorized to bind Landmark with respect to certain representations made during the course of the Claim and the procurement process for any property insurance policies purchased for the Property, including the Policy issued by Admiral to Defendant Landmark for the 2023-2024 coverage period.

17.

In or around March 2022, Ms. Bentancur, on behalf of Defendant Landmark, contacted Relation Insurance and asked Relation Insurance to obtain insurance

quotes for property insurance coverage and commercial general liability insurance coverage for a policy period of June 20, 2022 through June 20, 2023.

18.

In or around March 2022, Relation Insurance asked Defendant Landmark to complete an "Exposure Workbook" in the form of an excel spreadsheet which inquired about various characteristics of the Property and which was intended to be submitted to insurance carriers as part of the marketing and quoting process for insurance coverage for the Property.

19.

The Exposure Workbook specifically inquired as to whether the Property was sprinklered, stating, "Sprinklered?" to which Defendant Landmark responded, "Yes." (Exhibit B).

20.

The Exposure Workbook also specifically asked about the type and date of last update to the roofing system of the Property and the date of the last updates for the mechanical systems of the Property, including electrical, HVAC, and plumbing. (See, Exhibit B).

21.

On the Exposure Workbook, Defendant Landmark indicated that the roof of the Property was "updated" in 2021 and that the  electrical, plumbing, and HVAC systems were "updated" in 2021. (See, Exhibit B).

22.

Ms. Betancur confirmed and/or ratified the information contained in the Exposure Workbook as true and accurate when she completed and returned the Exposure Workbook to Relation Insurance.

23.

On or around April 25, 2022, Defendant Landmark's insurance carrier for the 2021-2022 coverage period issued a non-renewal notice for property insurance coverage due to the age of the Property.

24.

At the request of Defendant Landmark, Relation Insurance submitted an ACORD application dated May 13, 2022 (the "May 2022 Application") and the completed Exposure Workbook to at least five carriers in or around May 2022. (See, Exhibit B; Exhibit C, May 2022 Application).

25.

The document attached here as Exhibit B is a true and accurate copy of the Exposure Workbook.

26.

The document attached here as Exhibit C is a true and accurate copy of the May 2022 ACORD Application.  Exhibit C is redacted only to exclude the identity of prior carriers and their confidential/proprietary premium information.

27.

The May 2022 ACORD Application stated the Property was "100%" sprinklered. (See, Exhibit C).

28.

The May 2022 ACORD Application indicated that the electrical, mechanical, and wiring systems of the Property were installed and/or updated in 2021.

29.

Defendant Landmark had the opportunity to review both the Exposure Workbook and the May 2022 ACORD Application before they were submitted to insurance carriers as part of the marketing and quoting process.

30.

Defendant Landmark did not make any efforts to correct or change any of the information contained in the May 2022 ACORD Application or the Exposure Workbook before these documents were submitted to insurance carriers as part of the marketing and quoting process for the 2022-2023 coverage period.

31.

Defendant Landmark confirmed and/or ratified the information contained in the Exposure Workbook and the May 2022 ACORD Application as true and accurate.

32.

Each of the five carriers that Relation Insurance contacted in 2022 declined to quote the Property. One carrier declined the risk, in part, because of issues with the sprinkler system.

33.

During the 2022 marketing and quoting process, numerous carriers declined to provide an insurance quote for the Property. Ultimately, only two carriers agreed to provide any sort of quote for the Property for the June 20, 2022 through June 20, 2023 coverage period.

34.

The property insurance coverage for the Property during the 2022-2023 coverage period was divided among two policies:  one primary policy, and a secondary excess policy.

35.

In June 2022, Ms. Betancur received a Sprinkler Inspection Report from Chief Fire Protection and an inspection report from Chief Facility Defense.

36.

The Chief Facility Defense report expressly stated that the units themselves did not have sprinklers.

37.

Ms. Betancur, on behalf of Defendant Landmark, was provided the report from Chief Facility Defense and had the opportunity to review the information therein, including the information that the units themselves did not have sprinklers.

38.

In or around January 2023, Defendant Landmark requested Relation Insurance to obtain quotes from carriers for the June 20, 2023 through June 20, 2024 policy period.

39.

At the request of Defendant Landmark, Relation Insurance submitted an ACORD application dated February 8, 2023 (the "February 2023 ACORD Application") and the previously completed Exposure Workbook to carriers and independent insurance brokers on or around February 17, 2023. (See, Exhibit B; Exhibit D, February 2023 ACORD Application).

40.

Exhibit D is a true and accurate copy of the February 2023 ACORD Application. Exhibit D is redacted only to exclude the identity of prior carriers and their confidential/proprietary premium information.

41.

The February 2023 Application stated the Property was "100%" sprinklered, and the Exposure Workbook stated "Sprinklered? Yes." (See, Exhibits B & D).

42.

The February 2023 ACORD Application indicated that the electrical, mechanical, and wiring systems of the Property were installed and/or updated in 2021.

43.

On the Exposure Workbook, Defendant Landmark indicated that the roof of the Property was "updated" in 2021 and that the electrical, plumbing, and HVAC systems were "updated" in 2021.

44.

Defendant Landmark had an opportunity to review and correct the February 2023 ACORD Application and the Exposure Workbook, if necessary, before submitting the documents to insurance carriers as part of the marketing and quoting process for the 2023-2024 coverage period.

45.

Landmark did not make any efforts to correct or change any of the information contained in the February 2023 ACORD Application or the Exposure Workbook before submitting the documents to insurance carriers as part of the marketing and quoting process for the 2023-2024 coverage period.

46.

Defendant Landmark confirmed and/or ratified the information contained in the Exposure Workbook and the February 2023 ACORD Application.

47.

Admiral's underwriter received Defendant Landmark's Application and Exposure Workbook on or around March 30, 2023.

48.

As part of its underwriting process, and to further obtain information material to Admiral's acceptance of the risk and issuance of the Policy, it specifically requested that Defendant Landmark complete a Habitational Supplement and provide responses to specific inquiries made therein.

49.

On or around April 10, 2023, Ms. Betancur filled out the Habitational Supplement on behalf of Defendant Landmark with the knowledge that it would be submitted to Admiral's underwriters as part of its underwriting process. (See, Exhibit E, Habitational Supplement).

50.

Exhibit E is a true and accurate copy of the Habitational Supplement submitted as part of the underwriting process for the Policy.

51.

Ms. Betancur represented in the Habitational Supplement that the Property was "100%" sprinklered.  (See Exhibit E).

52.

Ms. Betancur represented in the Habitational Supplement that the Property did not have any commercial units. (See, Exhibit E).

53.

Ms. Betancur represented in the Habitational Supplement that there were "major updates" to the roof, pluming, HVAC, and electrical systems in 2021. (See Exhibit E).

54.

Ms. Betancur knew, or should have known, that the representations contained in the Habitational Supplement were not accurate.

55.

The Property is not 100% sprinklered.

56.

The Property has commercial units located in the lobby of the Property.

57.

Ms. Betancur admitted that she was not aware of any major updates to the roof, plumbing, HVAC, or electrical systems in 2021 other than maintenance repairs to the HVAC system.

58.

On or around April 11, 2023, Relation Insurance submitted the Habitational Supplement to Admiral's underwriters on behalf of Defendant Landmark.

59.

Admiral relied on the information contained in the ACORD Application, the Habitational Supplement, and the Exposure Workbook when deciding to accept the risk and issue the Admiral policy.

60.

The information in the ACORD Application, the Habitational Supplement, and the Exposure Workbook was material to the acceptance of the risk and to Admiral's issuance of the Policy.

61.

Upon information and belief, the Property was only five percent sprinklered and contained five commercial units at the time of submission of the February 2023 Application, Exposure Workbook, and Habitational Supplement to Admiral.

62.

In reliance on the information contained in the Application, Exposure Workbook, and Habitational Supplement, on or around May 31, 2023, Admiral quoted a package policy for the Property.  Admiral also based its coverage terms on

the information provided in the Application, Exposure Workbook, and Habitational Supplement.

63.

The quoted premium Defendant Landmark received from Admiral was significantly less than the premium of the prior insurance policy for the Property.

64.

Defendant Landmark did not inquire about the significantly reduced premium, nor did it confirm whether the information submitted to Admiral was accurate.

65.

On or around June 13, 2023, the President of Defendant Landmark's homeowners' association, Yali Lu, was provided with a copy of the February 2023 ACORD Application which represented that the Property was "100%" Sprinklered.

66.

The February 2023 ACORD Application also indicated that there were major updates to the plumbing, electrical, roof, and HVAC systems in 2021.

67.

On or around June 13, 2023, Ms. Lu personally signed the February 2023 ACORD Application and submitted it to Relation Insurance with the understanding

it would be submitted to Admiral as part of the underwriting process.  (See, Exhibit F, Signed ACORD Application).

68.

A true and accurate copy of the Signed ACORD Application is attached here as Exhibit F.  Exhibit F is redacted only to exclude the identity of prior carriers and their confidential/proprietary premium information.

69.

Ms. Lu had an opportunity to review the information and representations contained within the Signed ACORD Application before it was signed and submitted to Relation Insurance.

70.

Ms. Lu made no effort to change and/or modify the information contained in the Signed ACORD Application.

71.

On or around June 20, 2023, Admiral issued Policy number 21-21947510-30 for the 2023-2024 coverage period to Defendant Landmark as the named insured.

72.

On or around January 17, 2024, a fire occurred at the Property which caused damage to the Property.

73.

The fire originated in the commercial unit occupied by a business Ms. Lu owned and/or operated.

74.

Defendant Landmark reported the Loss to Admiral on or around January 18, 2024. Admiral assigned claim number 204-1684 (the "Claim").

75.

During the course of the claim, Admiral learned that the Property contained five commercial units on the first floor. The fire originated in commercial unit C5.

76.

During the course of Admiral's investigation of the Claim, it also learned that the Property was not 100% sprinklered, which was contrary to the information in the Exposure Workbook, the February 2023 ACORD Application, and the Habitational Supplement. The only portions of the Property that were sprinklered were the boiler room and laundry room in the basement. Thus, the vast majority of the Property was not sprinklered and lacked fire suppression systems.

77.

Admiral promptly issued a Reservation of Rights to Defendant Landmark on May 9, 2024 upon learning that the characteristics of the sprinkler system and

commercial space at the Property were not as represented in the February 2023 ACORD Application and Habitational Supplement. (See, Exhibit G).

78.

A true and accurate copy of the Reservation of Rights letter is attached hereto as Exhibit G.

79.

At the time Admiral issued the Policy, it relied upon representations by Defendant Landmark that the Property was 100% sprinklered and did not have commercial space, as well as all other information contained in the information submitted to Admiral. (See, Exhibits B, D, & E).

80.

If Defendant Landmark represented the true characteristics of the Property in its February 2023 ACORD Application, Exposure Workbook, and Habitational Supplement, Admiral would have declined to insure the risk or modified the coverage and/or quoted a higher premium.

## THE INSURANCE POLICY

81.

Admiral incorporates by reference the foregoing Paragraphs 1 through 80 as if fully set forth herein.

82.

As discussed in Paragraph 71 above, Admiral issued an insurance policy to Defendant Landmark providing insurance coverage subject to the terms, conditions, and exclusions contained in the Policy. A true and correct copy of the Policy is attached hereto as Exhibit H. Premium information has been redacted from the Declarations pages for the Policy. The Policy was delivered in Georgia, and Georgia law applies to the construction and interpretation of the Policy.

83.

On the Declarations page of the Policy, it describes the business as "Condominium **without mercantile.**" (emphasis added).

84.

On the Commercial Property Coverage Declarations page, the insured is described as "Condominiums - residential (association risk only) - **without mercantile occupancies** - Over 30 units." (emphasis added).

85.

The Policy provides:

IN RETURN FOR YOUR PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

. . .

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGES FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY

86.

The Policy provides:

<b>CONDOMINIUM ASSOCIATION COVERAGE FORM</b>

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.,** Definitions.

87.

The Policy provides:

**E. Loss Conditions**
The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

. . . .

**3. Duties In The Event Of Loss Or Damage**
**a.** You must see that the following are done in the event of loss or damage to Covered Property:
**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim,  including an insured's books and records. In the event of an examination, an insured's answers must be signed.

88.

The Policy provides:

4. **Loss Payment:**

. . .

**g.**  We will pay for covered loss or damage to Covered Property within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**(1)** We have reached agreement with you on the amount of loss; or
**(2)** An appraisal award has been made.
If you name an insurance trustee, we will adjust losses with you, but
we will pay the insurance trustee. If we pay the trustee, the payments
will satisfy your claims against us.

89.

The Policy further provides the following conditions:

## COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy
Conditions and applicable Loss Conditions and Additional Conditions in
Commercial Property Coverage Forms.

### A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates
to this Coverage Part at any time. It is also void if you or any
other insured, at any time, intentionally conceal or misrepresent
a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

90.

The Policy further provides:

### D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part
unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

91.

The Policy provides:

**Causes of Loss – Special Form**

. . . .

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.,** Definitions.

**A. Covered Causes Of Loss**

Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

**1.** Excluded in Section **B.,** Exclusions; or
**2.** Limited in Section **C.,** Limitations;

that follow.

. . . .

B.  **Exclusions**:

. . .

2.  We will not pay for loss or damage caused by or resulting from any

of the following:

. . .

i.  Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

92.

Based on the foregoing, Admiral contends that uncertainty and insecurity exists between the parties with respect to the rights, status, damages, and other legal relations regarding coverage for the Property as a consequence of the Loss due to the misrepresentations contained in Defendant Landmark's February 2023 ACORD Application, Exposure Workbook, and Habitational Supplement and other activities of Landmark during the procurement of the Policy and the coverage investigation process as well as for the damages asserted by Landmark in this matter.

## FIRST CLAIM FOR RELIEF

93.

Admiral incorporates by reference the foregoing Paragraphs 1 through 92 as if fully set forth herein.

94.

Given the foregoing, Admiral has the right to rescind the Policy and/or declare the Policy void *ab initio* pursuant to O.C.G.A. § 33-24-7(b)(2) due to the misrepresentations, omissions, concealment of facts and/or incorrect statements, which were material to the acceptance of the risk or the hazard assumed by Admiral.

95.

Representations contained in the February 2023 ACORD Application, Exposure Workbook, and Habitational Supplement regarding the absence of commercial space and that the Property was 100% sprinklered were objectively false misrepresentations.

96.

Representations contained in the February 2023 ACORD Application, Exposure Workbook, and Habitational Supplement regarding the date of "updates" to the roof and mechanical systems were objectively false misrepresentations.

97.

Representations contained in the February 2023 ACORD Application signed by Ms. Lu on behalf of Defendant Landmark regarding that the Property was 100% sprinklered were objectively false misrepresentations.

98.

Representations contained in the February 2023 ACORD Application signed by Ms. Lu on behalf of Defendant Landmark regarding date of "updates" to the roof and mechanical systems of the Property were objectively false misrepresentations.

99.

These false misrepresentations are material because they changed the nature, extent and/or character of the risk.

100.

These misrepresentations were material to Admiral's acceptance of the risk. If Defendant Landmark disclosed the true nature of the risk to Admiral, Admiral would have either not issued the Policy or would have issued the Policy with different limits and/or terms and conditions.

101.

Pursuant to O.C.G.A. § 33-24-7(b)(2), the Policy is void due to Defendant Landmark's objectively false misrepresentations which were material to Admiral's acceptance of the risk.

102.

Pursuant to O.C.G.A. § 33-24-7(b)(2), Admiral has the right to rescind the Policy due to Defendant Landmark's objectively false misrepresentations which were material to Admiral's acceptance of the risk.

## SECOND CLAIM FOR RELIEF

### 103.

Admiral incorporates by reference the foregoing Paragraphs 1 through 102 as if fully set forth herein.

### 104.

Given the foregoing, Admiral has the right to rescind the Policy and/or declare the Policy void *ab initio* pursuant to O.C.G.A. § 33-24-7(b)(3) because Admiral in good faith would not have issued the Policy, would not have issued the Policy at the premium rate as applied for, and/or would not have provided coverage with respect to the hazard resulting in the Loss if the true facts had been known to Admiral.

### 105.

Pursuant to O.C.G.A. § 33-24-7(b)(3), the Policy is void due to Defendant Landmark's misrepresentations which caused Admiral to insure the Property when it otherwise would not have issued the Policy, or it would have issued the Policy in a different manner.

### 106.

Pursuant to O.C.G.A. § 33-24-7(b)(3), Admiral has the right to rescind the Policy due to Defendant Landmark's misrepresentations which caused Admiral to

insure the Property when it otherwise would not have issued the Policy, or it would have issued the Policy in a different manner.

## THIRD CLAIM FOR RELIEF

107.

Admiral incorporates by reference the foregoing Paragraphs 1 through 106 as if fully set forth herein.

108.

Defendant Landmark violated the Concealment, Misrepresentation or Fraud provision of the Policy and is therefore prohibited from recovery under the Policy.

109.

The Policy provides:

### COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

### B. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or

4.    A claim under this Coverage Part.

110.

At the direction of Defendant Landmark, Relation Insurance submitted the February 2023 ACORD Application, Exposure Workbook, and Habitational Supplement to Admiral which contained misrepresentations regarding material facts about sprinklers and commercial space at the Property.  The documents also contained representations about dates of installation and/or updates to the roofing system and mechanical systems of the Property which were not accurate.

111.

At the time Ms. Betancur completed and reviewed the February 2023 ACORD Application, Exposure Workbook, and Habitational Supplement , Ms. Betancur was aware of the indisputable facts that the Property contained commercial space, and it was not 100% sprinklered.

112.

At the time the Ms. Betancur completed and reviewed the February 2023 ACORD Application, Exposure Workbook, and Habitational Supplement, Ms. Betancur was aware that the roof system and mechanical systems were not installed and/or updated on the date and manner indicated.

113.

At the time Ms. Lu signed the February 2023 ACORD Application on behalf of Defendant Landmark, Ms. Lu was aware of the indisputable facts that the Property contained commercial space and it was not 100% sprinklered.

114.

Defendant Landmark, through its authorized representatives, had knowledge that the representations contained in the February 2023 ACORD Application, Exposure Workbook, and Habitational Supplement regarding sprinklers and commercial space were false at the time they were submitted and signed.

115.

Defendant Landmark, through its authorized representatives, had knowledge that the representations contained in the February 2023 ACORD Application, Exposure Workbook, and Habitational Supplement regarding the age of installation or "updates" to the roofing and other mechanical systems were not accurate.

116.

Defendant Landmark submitted the February 2023 ACORD Application, Exposure Workbook, and Habitational Supplement to Admiral with the intent to obtain insurance coverage based upon the material misrepresentations contained in these documents.

117.

Pursuant to the Concealment, Misrepresentation or Fraud provision of the Policy, the Policy is void because Defendant Landmark intentionally concealed or misrepresented material facts concerning the Covered Property with the intent to obtain insurance coverage.

## FOURTH CLAIM FOR RELIEF

118.

Admiral incorporates by reference the foregoing Paragraphs 1 through 117 as if fully set forth herein.

119.

Relation Insurance acted solely as the agent of Defendant Landmark during the policy procurement process.

120.

As Relation acted solely as the agent for Defendant Landmark during the policy procurement process, representations by Relation to third parties on Defendant Landmark's behalf bind Defendant Landmark.

121.

Any material misrepresentations made by Defendant Landmark's agent, Relation Insurance, in the February 2023 ACORD Application, Exposure

Workbook, and/or Habitational Supplement void the Policy and/or Admiral may rescind or declare the Policy void *ab intio* based on these representations.

### 122.

Defendant Landmark authorized Relation Insurance to submit insurance applications on its behalf.

### 123.

Defendant Landmark's representatives had the opportunity review the information contained in the February 2023 ACORD Application, Exposure Workbook, and Habitational Supplement submitted to Admiral by Relation Insurance.

### 124.

For the reasons set forth above, any material misrepresentations made by Relation Insurance during the policy procurement process bind Defendant Landmark and void the Policy and/or Admiral may rescind or declare the Policy void *ab intio* based on these representations.

### **FIFTH CLAIM FOR RELIEF**

### 125.

Admiral incorporates by reference the foregoing Paragraphs 1 through 124 as if fully set forth herein.

126.

Admiral is uncertain as to whether the amounts set forth in the proof of loss submitted by Defendant Landmark on or about January 21, 2025 truly and accurately represent the reasonable and necessary costs to repair and/or replace damage to covered property as a result of the Loss.

127.

Admiral is uncertain as to whether the damages sought by Defendant Landmark reflect exacerbated damages which occurred as a result of Defendant Landmark's failure to take all reasonable steps necessary to protect the Property in accordance with its Duties After Loss set forth in the Policy.

128.

Admiral is uncertain as to whether the damages sought by Defendant Landmark occurred as a result of Defendant Landmark's failure to preserve and/or protect the property and are therefore excluded in accordance with the Policy language quoted above.

129.

Admiral faces conflicting obligations in that the Policy may be rescinded and/or declared void *ab initio* pursuant to Georgia law, and that payment to Defendant Landmark  would be considered contrary to Georgia law and/or the terms

of the Policy and would constitute a voluntary payment.  In contrast, a refusal to pay Defendant Landmark could expose Admiral to civil liability for breach of the Policy.

130.

Based on the foregoing, Admiral asserts that a genuine dispute exists regarding the coverage issues mentioned above and a declaratory judgment is necessary to determine the rights and obligations of the parties.

WHEREFORE, Admiral prays:

a.  For a declaratory judgment stating that the Policy is void and/or allowing Admiral to rescind or declare the policy void *ab initio* pursuant to O.C.G.A. § 33-24-7(b)(2) due to Defendant Landmark's misrepresentations, omissions, concealment of facts, and/or incorrect statements which were material to the acceptance of the risk or the hazard assumed by Admiral;

b.  For a declaratory judgment stating that the Policy is void and/or allowing Admiral to rescind or declare the policy void *ab initio* pursuant to O.C.G.A. § 33-24-7(b)(3) because Admiral in good faith would not have issued the Policy, would not have issued the Policy at the premium rate as applied for, and/or would not have provided coverage with respect to the hazard resulting in the Loss if the true facts had been known to Admiral;

c.  For a declaratory judgment that the Policy is void due to Defendant Landmark's violation of the Concealment, Misrepresentation or Fraud provision of the Policy;

d.  For a declaratory judgment that the Policy is void and/or allowing Admiral to rescind or declare the policy void *ab initio* due to material misrepresentations made by Relation Insurance on behalf of Defendant Landmark;

e.  For a declaratory judgment defining the proper scope of damages for this matter;

f.  For such other and further relied as this honorable Court may deem proper under the circumstances; and

g.  That process and summons be issued to Defendant herein and that service on the Defendant be had as required by law.

This 30th day of January, 2025.

SWIFT CURRIE MCGHEE & HIERS, LLP

*/s/ Taylor C. Gore*
Jessica M. Phillips
Georgia Bar No. 922902
Taylor C. Gore
Georgia Bar No. 205817
*Attorneys for Petitioner Admiral Indemnity Company*

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  404-874-8800
Jessica.phillips@swiftcurrie.com
Taylor.gore@swiftcurrie.com

## <u>LOCAL RULE 5.1(C) CERTIFICATION</u>

By signature below, counsel certifies that the foregoing pleading was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1(C).

Respectfully submitted this 30th day of January, 2025.

SWIFT CURRIE MCGHEE & HIERS, LLP

*/s/ Taylor C. Gore*
Jessica M. Phillips
Georgia Bar No. 922902
Taylor C. Gore
Georgia Bar No. 205817
*Attorneys for Petitioner Admiral Indemnity Company*

1420 Peachtree Street, NE
Suite 800
Atlanta, GA   30309
Tel:    (404) 874-8800
jessica.phillips@swiftcurrie.com
taylor.gore@swiftcurrie.com

4932-4689-2564, v. 1